**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Kimberly Ann McClay and** | ) | |
| **Martin Lespier,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **COMPLAINT AND JURY DEMAND** |
| **Compass Group USA, Inc. d/b/a ;** | ) | |
| **Unidine** | ) | |
| **Jenner's Pond, Inc.; and Simpson** | ) | |
| **Senior Services** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiffs, Kimberly Ann McClay and Martin Lespier, by and through their undersigned counsel, The Lacy Employment Law Firm LLC, hereby file this Complaint against Defendants and state as follows:

**PROCEDURAL AND ADMINISTRATIVE REMEDIES**

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about May 12, 2021, Plaintiff Lespier dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the

Pennsylvania Human Relations Commission alleging age, and race discrimination as well as retaliation. *See* EEOC Charge of Discrimination, attached as Exhibit 1.

4.     On or about July 28, 2021, Plaintiff McClay dual-filed a charge with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging age, sex and disability discrimination as well as retaliation.[1] *See* EEOC Charge of Discrimination. *Id.*

5.     The EEOC issued a Right to Sue Letters ("Right to Sue") and Plaintiffs timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued.

6.     Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

## JURISDICTION AND PARTIES

1.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

2.      This District Court has jurisdiction over Count I (ADEA) pursuant to 29. U.S.C. § 621, et seq.

3.     This District Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. § 12101, et seq.

4.     This District Court has jurisdiction over Count III (FMLA) pursuant to 29 CFR § 825.100, et seq.

5.     This District Court has jurisdiction over Count IV (PHRA) pursuant to pendent supplemental jurisdiction.[1]

---

[1] It has been less than one year since Plaintiffsdual-filed their Charge of Discrimination as a Complaint with the Pennsylvania Human Relations Commission for Defendant's violations of  the Pennsylvania Human Relations Act,

6.      Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

7.       Ms. McClay is a white disabled woman over the age of 40 years old who worked, at all relevant times, for Jenner's Pond, a continuing care retirement community (CCRC) in Chester County, Pennsylvania.

8.      Mr. Lespier is a hispanic man over the age of 40 years old who worked, at all relevant times, for Jenner's Pond.

9.      Simpson Senior Services is a company headquartered at, upon information and belief, 150 Monument Rd Ste 105, Bala Cynwyd, PA 19004. Simpson Senior Services acquired Jenner's Pond in 2002.  Jenner's Pond, Inc. ("Jenner's Pond") is, upon information and belief, a subsidiary of Simpson Senior Services and Plaintiffs joint employer at all relevant times.

10.     Unidine Lifestyles was established in 2001 and acquired by the Compass Group in 2017. Unidine Lifestyles/Compass Group ("Unidine") is contracted by Simpson Senior Services as a food service provider.  Unidine at all relevant times employed Plaintiffs.   Upon information and belief, Unidine is located at 2400 Yorkmont Rd, Charlotte NC, 28217.

11.     Jenner's Pond, Inc. is located, upon information and belief, at 2000 Greenbriar Lane, West Grove, PA 19390,  is a subsidiary of Simpson Senior Services and at all relevant times employed Plaintiffs.

12.     Both Simpson Senior Services and Unidine Lifestyles/Compass Group "regularly conduct business" at Jenner's Pond in Chester County, Pennsylvania. Jenner's Pond is located at 2000 Greenbriar Ln West Grove, PA, 19390.

## FACTUAL BACKGROUND

---

43 P.S. § 951, et seq. ("PHRA"). Plaintiffs will seek to amend their Complaint in this matter to add their PHRA claims once they have exhausted their administrative remedy with respect to those claims.

13.     Ms. McClay worked at Jenner's Pond for approximately twenty years.  She was hired on April 13, 2000.  In her last position, General Manager for Hospitality, Ms. McClay's job duties included overseeing Dining in all areas–Independent Living, Assisted Living and Skilled Nursing. She was also in charge of Housekeeping from 2007 until 2021, when Simpson Senior Services requested a contract change, adding Housekeeping to her responsibilities. Ms. McClay received numerous accolades for her dedication, loyalty and outstanding performance.

14.     Until February 2021, Ms. McClay had not received any complaints from management, or clients, related to her job performance. In fact, Ms. McClay was consistently praised for her performance, receiving merit-based salary increases each year. In addition to internal commodation, Ms. McClay's exceptional performance was recognized by leadership of other CCRCs.

15.     Mr. Lespier started working at Jenner's Pond starting in 1998.  Mr. Lespier was an executive chef, responsible for all food operations in the Alison Ruston Preston Buildings at Jenner's Pond.  Ms. McClay was Mr. Lespier's supervisor.

16.     Mr. Lespier excelled during his time with Defendants.  He consistently kept food and labor costs in line with budgets and routinely received positive remarks from clients and management regarding his performance.

17.     In or around December 2018, Jenner's Pond introduced Douglass Flasher as the new COO of Simpson Senior.  He was empowered to make tangible employment decisions regarding Jenner's Pond staff.  This included Plaintiffs.  Mr. Flasher's employment decisions, as COO, directly impacted and had an adverse affect on Plaintiffs before and after his appointment to Jenner's Pond interim executive director of Jenner's Pond.

18.     Both Ms. McClay and Mr. Lespier began feeling targeted professionally and

4

personally in early 2019. The new Chief Operating Officer for Simpson Senior Services at Jenner's Pond, Douglas Flasher, was the source of the humiliation and denigrating remarks. Management was verbally informed of the older employees' concerns in 2019. A consummate professional, Ms. McClay, followed Compass policy to address the toxic environment that decreased staff, and resident, satisfaction.

19.     In 2019, Mr. Flasher began to express displeasure with Plaintiffs and created a hostile work environment based on severe and pervasive disparaging comments.  Plaintiff's verbally reported their concerns regarding this environment to Julian Hutton, Regional Director of Operations, Unidine Lifestyles.

20.     On October 12, 2019, Mr. Lespier was moved to another building and his job was taken over by his assistant.  There was no reason given for this transfer. Rather, Mr. Lespier was moved to embarrass and degrade Mr. Lespier as well as to usher in his forced resignation.  This transfer was indeed a demotion.  All executive chefs worked at the largest buildings within Jenner's Pond.  Mr. Lespier's new building, Ruston, however was not one of the larger buildings and had lower food quality.  He was moved to this lesser role because of his age.

21.     Mr. Lespier was also told that he would not be receiving his annual raise in or about this time. Mr. Lespier previously received a raise every year. But, given that his raise was already slated in the budget, Mr. Lespier did receive his raise.

22.     Doug Flasher made the decision to transfer Mr. Lespier.  But he directed Unidine to deliver the news and inform Mr. Lespier of this adverse employment decision.

23.     At the January 14, 2020 Dining Committee Meeting, residents complained to Mr. Flasher about what they perceived as a decline in dining services, especially after Mr. Lespier was reassigned to an inferior position, and replaced by a younger Chef.

24.     Mr. Flasher publicly humiliated Ms. McClay at this meeting, in effect holding her responsible for the changes. In fact, it was Mr. Flasher who contrived to remove Mr. Lespier through Ms. McClay's supervisor, Matt Groux, at Unidine Lifestyles. Compass Human Resources escalated Ms. McClay's complaint about Mr. Flasher to the Regional Vice President, Eugene Hood, and brought it to the attention of Unidine Area President, Jack Silk. However, Mr. Flasher's behavior towards the older employees did not change.

25.     Residents at Jenner's Pond began to voice dissatisfaction regarding Mr. Flasher's leadership and direction.  Ms. McClay noted that she felt that she could not lie to her residents and that Mr. Flasher aimed to terminate her contract and employment.

26.     Relevant email:

From: Kim McClay <kamkkn5@gmail.com>
Date: February 3, 2020 at 9:17:25 PM EST
To: julianhutton@unidine.com
Subject: Dining Committee Meeting 1-14-20

27.     Relevant excerpt:

need to eat in the Dining Rooms, and what I need to do to be healthy". A resident asked what is a FRP, he explained it and then said "an FRP could be coming soon". The meeting generally runs about an hour, this one lasted over 2 hours. The residents were very apologetic to me after Doug left the meeting (he was there about an hour). I have remained silent on many occasions regarding the growing unhappiness voiced by residents, to maintain my professional integrity, I will never be dishonest to our residents. I have been feeling for months now that I have been targeted, both professionally and personally, that there is a plan which includes the elimination of the Unidine contract. My salary, my work ethic, my relationships with JP residents, my loyalty has been under scrutiny. The workplace feels very hostile. My job performance, audits/surveys results, team building/growth, over my 20 years at JP does not seem to matter.

Thank You,

Kim McClay

28.     Mr. Hutton further noted Mr. Flasher's behavior to Plaintiffs, who were the only Unidine employees that worked at Jenner's Pond.

29.     Relevant email:

----Original Message----
From: JHutton@unidine.com
Sent: 2/19/2020 10:40:22 AM
To: Remedy.Service@compass-usa.com
Subject: RE: HRR000001116197 -

30.  Relevant excerpt:

In early 2019 Simpson Senior Services hired a new COO, Doug Flasher. Flasher immediately made it forcefully known that he didn't like contract services and thought he could run what we did better and for less money. His background was in mid-level senior communities in Lancaster, PA and it was apparent he did not understand the expectations of the very different resident base at Jenner's Pond.

31.  Another excerpt:

Flasher took every opportunity to publicly denigrate contract services, Unidine, and our staff. He frequently made snide remarks about what we cost, what value (or lack thereof) we brought, how much our staff were paid and how effective they were. He found a member of the management team of Jenner's Pond who, for whatever reason in the past, had an axe to grind against Kim and Martin. She fed Flasher false information about Kim and Martin such as that Kim was paid what she was paid because of nepotism, that she was always on vacation and never at the property, that the residents disliked Kim, and that Martin didn't do anything in the kitchen and the program worked better when Martin was out following a heart attack. Since last year (and before Flasher made changes to the program) the resident satisfaction scores came in at an incredible 96% satisfaction level which anyone would know that it wasn't achieved through incompetence. But Flasher followed up on this, demanding Kim's complete salary history from when she started (I took Unidine legal advice on this) and evidence that she was on property when she was supposed to be. He treated her with distain when he met with her and frequently failed to respond to her greetings.

32.  Ms. McClay was told that her concerns regarding the hostile work environment and Mr. Flasher's targeting of her and Mr. Lespier would be addressed.  But she never received any confirmation that Unidine reached out to its joint employer to have this conversation or take corrective action.

33.  In July 2020, Mr. Flasher assumed the role of interim executive director of Jenner's Pond.

34.  After Mr. Lespier's banishment to a new position, he was eventually informed that Mr. Flasher wanted Mr. Lespier to resign from his position.  Matt Groux told Mr. Lespier that he needed to resign by December 2020.  He was not given any legitimate business reason for his termination.

35.     After 23 years of serving the Jenner's Pond community, Mr. Lespier resigned at the end of 2020. Both he and Ms. McClay felt that Mr. Flasher was attempting to create a work environment so hostile that their positions became untenable, forcing the resignation of Mr. Lespier.  He had no other choice but to resign.  Mr. Flasher made clear to other employees that if Mr. Lespier did not resign, Mr. Flasher would fire him.

36.     Mr. Flasher endeavored to frame Mr. Lespier's termination as a retirement, which evidences age discrimination.  He believed that Mr. Lespier was now too old for the job and that retirement was the preferable means to have Mr. Lespier ousted.  Instead, rather than giving Mr. Flasher this satisfaction and allowing him to frame the termination in such a way, Mr. Lespier resigned.

37.     Mr. Lespier was replaced by Lance Powers, a forty-year old male who the Defendants paid $14,000 less than Mr. Lespier.

38.     Following his termination, and because of the discrimination/harassment, Mr. Lespier suffered from emotional distress, which caused physical manifestations.  He developed headaches and problems sleeping.

39.     In or around November 12, 2020, Ms. McClay slipped and fell while attempting to enter the building.  She endeavored to persevere through it without requesting time off work. However, the pain and injury eventually became too much. A worker's compensation file was opened in our around that date.  Jenner's Pond, Inc. was listed at Ms. McClay's employer on that file, which was verified by her employer, Jenner's Pond, Inc.

40.     On February 8, 2021, Douglas Flasher requested a meeting with Matt Groux and Eugene Hood. On their way to the meeting, Messrs. Groux and Hood overheard a phone conversation in which Ms. McClay learned that surgery was recommended to treat her back pain.

After the meeting, they informed Ms. McClay that she was immediately placed on administrative leave during an investigation of theft. She was asked to leave, and locked out of Jenner's Pond email. She did not take any of her belongings and none of them were returned.

41.     On or around February 12, 2021, Ms. McClay's primary care provider, Julia Kasper, submitted FMLA paperwork to Unidine/Compass. The allegation of theft was determined to be unfounded.

42.     On or around March 15, 2021, Matt Groux informed Ms. McClay that due to the audit and the fact that she was on leave for three months following her accident, she would be relieved of her duties at Jenner's Pond due to Jenner's Pond's lack of confidence in her ability to lead.  She was informed that her previous position would be filled.

43.     On March 16, 2021, Mr. Groux formally emailed Ms. McClay and summarized their previous conversation.

> **From:** "Groux, Matthew" <MGroux@unidine.com>
> **Date:** March 16, 2021 at 1:47:18 PM EDT
> **To:** "McClay, Kim" <KMcClay@unidine.com>
> **Cc:** "Depiero, Janet" <jdepiero@unidine.com>
> **Subject:** RE: Call
>
> Kim,
>
> Please see below:
>
>     a.  Based on your inability to provide documentation that you had in fact billed your daughter, and underlined received timely payments for goods and services provided, we have lost confidence in your ability to successfully lead the team at Jenner's Pond
>
>     b.  Although you reported a slip and fall while entering the building on November 12, 2020, you did not request a LOA until three months later, on February 12, 2020, after you were aware that there was an audit of past invoices on February 8th, and that we were looking for proof of payment of multiple invoices pertaining to your daughter's business
>
>     c.  We will allow you to continue your approved LOA through May 7th, and will look to place you at another location when you are able to return to work
>
>     d.  We intent to backfill your DSD role at Jenner's Pond as quickly as possible

44.     Mr. Groux, a Unidine employee, neglected to mention that he and Doug Flasher overheard Ms. McClay on the phone with her doctor on February 8, 2021.  And, immediately

after, they launched an audit.  This was retaliatory and discriminatory.

45.     Specifically, Matt Groux and Gene Hood came to Jenner's Pond for a last minute meeting with Doug Flasher.  When they arrived at Ms. McClay's office, she was on the phone with her doctor.  Ms. McClay relayed to them that she would need surgery.  In apparent shock, Mr. Groux and Mr. Hood, in more of a statement than a question, said, "you're not okay."  They then left for their meeting with Mr. Flasher.  Ms. McClay was placed on administrative leave four hours later.

46.     On March 24, 2021, Ms. McClay was informed that she would resume work at a level below her proven professionalism when returning from medical leave.

47.     Ms. McClay did not have clear guidance on her employment options with Simpson Senior Services at Jenner's Pond or Unidine Lifestyles/Compass.

48.     Once admired and respected throughout the industry, Jenner's Pond became an increasingly hostile workplace, targeting older employees.

49.     Plaintiffs have suffered a number of damages including loss of identity, lowered self esteem, future uncertainty, anxiety, stress, physical manifestations, sleeplessness, headaches, increased blood pressure, damage to their professional reputations, and hindrance of future job prospects.

## JOINT EMPLOYERS

50.     Jenner's Pond, Simpson Senior Services, and Unidine were Plaintiffs' joint employers.

51.     Simpson Senior Services, upon information and belief, is Jenner's Pond's parent company.  Simpson Senior Services shares and shared a common nucleus of executive employees with Jenner's Pond, which included Douglas Flasher.  Because both companies

shared a common nucleus of executives with the power to take and did not tangible employment

actions against Plaintiffs, Simpson Senior Services is liable for discrimination/federal

employment law violations, as well as Jenner's Pond.

52.     Plaintiffs held salaried positions and reported to work pursuant to Jenner's Pond's

schedule.  They both had to adhere to Jenner's Pond's policies.

53.     Jenner's Ponds provided all tools and materials needed to perform the work. This

included training manuals, cooking equipment, and client workstations. Unidine also provided its

own policies and procedures to Plaintiffs.

54.     Plaintiffs at all relevant times worked at Jenner's Pond.  Ms. McClay was

provided two offices there.  And performed all work on site.  Mr. Lespier's kitchen station was

also located at Jenner's Pond.

55.     Unidine acted as a staffing agency, which is a common scenario for joint

employers.  Unidine employed Plaintiffs and provided them as staff for Jenner's Pond.  Unidine

had the power to hire, fire, discipline, and implement tangible employment actions.  Unidine

contracted with Jenner's Pond to provide Plaintiffs as their employees.  Both Plaintiffs worked at

Jenner's Pond for over 20 years.  This duration sufficiently evidences that both Unidine and

Jenner's Pond employed Plaintiffs.

56.     Jenner's Pond also expected Plaintiffs to be present during all of Jenner's Pond's

posted hours for employees.

57.     Plaintiffs did not seek any other employment or jobs with other companies as

independent contractors during their time with Defendants.

58.     Unidine paid and provided Plaintiffs with benefits.

**COUNT I**
**Age Discrimination in Employment Act, 29. U.S.C. § 621, <u>et seq</u>.**

11

### *Discrimination, Harassment, and Retaliation*
**(Plaintiffs v. Defendants)**

59.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth herein in their entirety.

60.    Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the ADEA.

61.    Plaintiffs are and were at the time of their demotions, adverse employment actions, and/or terminations, over forty years of age, and individuals within the class protected by the ADEA.

62.    In discriminating against and harassing Plaintiffs because of Plaintiffs' age, Defendants violated the ADEA.

63.    Defendants retaliated against Plaintiffs after Ms. McClay participated in protected activity and informed her superiors about the discrimination and harassment that occurred within Jenner's Pond against Plaintiffs.

64.    Defendants created a severe and/or pervasive work environment, which altered Plaintiffs' working conditions. As such, Defendants created a hostile work environment.

65.    Defendants are responsible, under a theory of respondeat superior, for the harassing actions of its executive team and other supervisors.

66.    Defendants' violations were intentional and willful.

67.    Liquidated damages are warranted given Defendants' willful violation of the ADEA.

68.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs suffered damages and have incurred attorney's fees and costs.

**COUNT II**

12

**Disability Discrimination in Violation of the ADA**
*Discrimination, Harassment, and Retalation*
**(McClay v. Defendants)**

69.     Plaintiff Kimberly McClay, suffered from qualifying health conditions under the ADA that affected her ability at certain times to perform daily life activities.

70.     Each defendant was, at all times, an employer with more than 15 employees and subject to the ADA.

71.     Ms. McClay's disability is recognized as a disability under the ADA.

72.     Ms. McClay was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation.

73.     Ms. McClay informed Defendants' managers/supervisors of her serious medical conditions.  And she also informed them of the need for medical treatment and/or other accommodations.

74.     Despite Ms. McClay's health conditions and limitations, she was still able to perform the duties of her job with or without a reasonable accommodation.

75.     Ms. McClay requested a reasonable accommodation for her above-mentioned disabilities.  Her doctor submitted information about her disability and need for accommodation on 2/12/2021 to Unidine Lifestyles/Compass Human Resources. Both Unidine Lifestyles/Compass Human Resource and Simpson Senior Services management informed Ms. McClay that her request for reasonable accommodation was under consideration. Defendants, however, demoted Ms. McClay instead.

76.     Defendant's actions in subjecting Ms. McClay to discrimination based on her actual and/or perceived disabilities and/or record of impairment, and retaliating against her for requesting a reasonable accommodation for Plaintiff's disabilities.

77.     Defendants retaliated against Ms. McClay by launching an investigation regarding her performance after they overheard a conversation in which Ms. McClay expressed that she was still injured from her fall and that a disability developed because of it.  They levied this adverse employment action as a means of potentially terminating her from the company and otherwise altering her job responsibilities and station.

78.     As a direct result of unlawful, discriminatory, and retaliatory employment practices in violation of the ADA of which Defendant engaged, Ms. McClay sustained permanent and irreparable harm, which caused loss of earnings, plus the value of certain benefits, loss of future earning power, back pay, front pay and interests.

### COUNT III
### FMLA Violation
### *Retaliation*
### (McClay v. Defendants)

79.     Plaintiff Kimberly McClay, incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

80.     Among the substantive rights granted by the FMLA to eligible employees is the right following leave to be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position.  29 U.S.C. § 2614(a)(1).

81.     The FMLA further prohibits discrimination or retaliation against an employee for exercising her FMLA rights or for opposing any practice made unlawful by the FMLA.  29 U.S.C. § 2615(a)(1).

82.     The actions of Defendants in retaliating against Ms. McClay for exercising her right to utilize FMLA, and interfering with her right to take FMLA leave, as described herein, constitutes a violation of the FMLA.

83.     After indicating that she was still injured, with the obvious implication that she may need time off work, Defendants removed her from her work responsibilities and drummed up an investigation against her. Placing her on administrative leave was an adverse employment action that was severely detrimental to her career and professional reputation.

84.     Defendants also removed Plaintiff from her previous job position under the pretext of them conducting an investigatory audit.  This occurred just months after Plaintiff applied for FMLA leave.

85.     Defendants' actions were willful, malicious, wanton, in bad faith and in reckless disregard of Ms. McClay's rights.

86.     As a direct result of the willful, wanton, reckless, careless, and negligent acts of the Defendants, Ms. McClay is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT IV
### Public Policy - Workers Compensation Retaliation
### (McClay v. Defendants)

87.     Plaintiff Kimberly McClay, incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

88.     Defendant's retaliatory acts violated public policy.

89.     In *Shick v. Shirley*, the Pennsylvania Supreme Court recognized that there are certain types of protected activity for which Pennsylvania public policy makes illegal.   This includes retaliating against an employee for seeking worker's compensation.

90.     Plaintiff applied for worker's compensation benefits.

91.     Defendant retaliated against Plaintiff after Plaintiff filed for worker's compensation benefits.

92.     There is a temporal proximity between the attempt to secure unemployment benefits and the retaliation in this case.

93.     Courts have found sufficient temporal proximity in support of a retaliation claim in cases where years have passed between the protected activity and retaliatory conduct. See *Robinson v. S.E. Pa. Transp. Auth., Red Arrow*, 982 F.2d 892, 894 (3d Cir. 1993) ("Although almost two years passed between these events and Robinson's termination from employment, we cannot say the trial judge was clearly erroneous in including these events in his determination that retaliation occurred.").

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a)  Enjoining and permanently retraining the violations alleged herein;

b)  Entering judgment against the Defendants and in favor of the Plaintiffs in an amount to be determined;

c)  Awarding compensatory damages to make Plaintiffs whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiffs have suffered or may suffer as a result of Defendants' improper conduct;

d)  Awarding compensatory damages to Plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's

pleasure, which Plaintiffs have suffered or may suffer as a result of Defendants'
improper conduct;

e)   Awarding punitive damages to Plaintiffs;

f)   Awarding Plaintiffs such other damages as are appropriate under Title VII,
Section 1983, the PHRA, and the PFPO;

g)   Awarding Plaintiffs the costs of suit, expert fees and other disbursements, and
reasonable attorney's fees; and,

h)   Granting such other and further relief as this Court may deem just, proper, or
equitable including other equitable and injunctive relief providing restitution for
past violations and preventing future violations.

Respectfully submitted,

Dated: November 5, 2021

*/s/ Andrew Lacy, Jr.*
Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT**
**LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law
.com

*Counsel for Plaintiffs*

Exhibit 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 530-2021-04382 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Kimberly Ann McClay** | 302-287-8655 | 12/15/1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1413 Berry Drive, Kennett Square PA. 19348 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Simpson Senior Services at Jenner's Pond | ~300 | 610-869-6711 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2000 Greenbriar Lane, West Grove PA 19390 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Unidine Lifestyles/Compass Group | > 500,000 | 704-328-6206 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1000 Washington Street, Suite 510, Boston, MA  02118–2798 | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **2019**   Latest **02/08/2021**
☒ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

Kim McClay, a 59-year old woman, had been working at Jenner's Pond since April 13, 2000. Currently, Jenner's Pond is a Simpson Senior Services continuing care retirement community (CCRC) under contract with Unidine, a food service    provider in the Compass Group. Despite providing over twenty-one (21) years of exceptionally professional service, management began targeting older employees. Only hours after her supervisors were made aware of Ms. McClay's disability, she was placed on administrative leave during an investigation of theft. Although the allegation of theft was determined to be unfounded, Ms. McClay was demoted while on medical leave.

In her last position, General Manager for Hospitality, Ms. McClay's job duties included overseeing Dining in all areas–Independent Living, Assisted Living and Skilled Nursing. She was also in charge of Housekeeping from 2007 until 2021, when Simpson Senior Services requested a contract change, adding Housekeeping to her responsibilities. In January 2021, Mr. Flasher requested another contract change to eliminate Ms. McClay's housekeeping responsbilities. Ms. McClay received numerous accolades for her dedication, loyalty and outstanding performance. Until February 2021, Ms. McClay had not received any complaints from management, or clients, related to her job performance. In fact, Ms. McClay was consistently praised for her performance, receiving merit-based salary increases each year. In addition to internal commodation, Ms. McClay's exceptional performance was recognized by leadership of other CCRCs. Once admired and respected throughout the industry, Jenner's Pond became an increasingly hostile workplace, targeting older employees. A consummate professional, Ms. McClay followed Compass policy to address the toxic environment that decreased staff, and resident, satisfaction.

Kim McClay, and another older employee working at Jenner's Pond for over 20 years, Martin Lespier, Senior Executive Chef, began feeling targeted professionally and personally in early 2019. The new Chief Operating Officer at Jenner's Pond, Douglass Flasher, was the source of the humiliation and denigrating remarks. Management was verbally informed of the older employee's concerns in 2019. At the 1/14/2020 Dining Committee Meeting, residents complained to Mr. Flasher about

what they perceived as a decline in dining services, especially after Mr. Lespier was reassigned, and replaced by a younger Chef. Mr. Flasher publicly humiliated Ms. McClay at this meeting, in effect holding her responsible for the changes. In fact, it was Mr. Flasher who contrived to remove Mr. Lespier through Ms. McClay's supervisor, Matt Groux. Compass Human Resources escalated Ms. McClay's complaint about Mr. Flasher to the Regional Vice President, Eugene Hood, and brought to the attention of Unidine Area President, Jack Silk. However, Mr. Flasher's behavior towards the older employees did not change. After 23 years of serving the Jenner's Pond community, Mr. Lespier resigned at the end of 2020. Similarly, Ms. McClay felt that Mr. Flasher was attempting to create a work environment so hostile that her position would become untenable, forcing her to resign. Mr. Flasher treated Ms. McClay differently than other similarly-situated males.

On 2/8/2021, Douglass Flasher requested a meeting with Matt Groux and Eugene Hood. On their way to the meeting, Messrs. Groux and Hood overheard a phone conversation in which Ms. McClay learned that surgery was recommended to treat her back pain. After the meeting, they informed Ms. McClay that she was immediately placed on administrative leave during an investigation of theft. She was asked to leave, and locked out of Jenner's Pond email. She did not take any of her belongings. On 2/12/2021, Ms. McClay's primary care provider, Julia Kasper, submitted FMLA paperwork to Unidine/Compass. The allegation of theft was determined to be unfounded.

On 3/24/2021, Ms. McClay was informed that she would resume work at a level below her proven professionalism when returning from medical leave. It has been indicated, in no uncertain terms, that Ms. McClay will not resume her responsibilities at her previous job. Certain facts remains clear, Jenner's Pond discriminated against Ms. McClay because of her age; upper management there and at Unidine failed to protect her from the hostile work environment. When her disability became known, Jenner's Pond and Unidine relied upon a pretextual theft investigation to justify their retaliation of removing her as General Manager for Hospitality.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 07/28/2021 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*          *Charging Party Signature* | |

EEOC Form 161-B (11/2020)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Kimberly McClay**<br>**1413 Berry Drive**<br>**Kennett Square, PA 19348** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-04383** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9707** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]    More than 180 days have passed since the filing of this charge.

[X]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]    The EEOC is terminating its processing of this charge.

[ ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R. Hutter*

**Dana R. Hutter,**
**Deputy Director**

9/15/21

*(Date Issued)*

Enclosures(s)

cc:

| | |
|---|---|
| **Giancarlo Pozos**<br>**Associate Counsel**<br>**Compass Group - Legal Dept.**<br>**2400 Yorkmont Rd**<br>**Charlotte, NC 28217** | **Andrew Lacy, Jr.**<br>**THE LACY EMPLOYMENT LAW FIRM LLC**<br>**2514 W Seybert**<br>**Philadelphia, PA 19121** |

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix,     and     other     ADA     related     publications,     available     at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
> ➢ **Only one** major life activity need be substantially limited.
> ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
> ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
> ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 530-2021-04382 |
| ☒ EEOC | |

**Pennsylvania Human Relations Commission** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Kimberly Ann McClay** | 302-287-8655 | 12/15/1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1413 Berry Drive, Kennett Square PA. 19348 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Simpson Senior Services at Jenner's Pond | ~300 | 610-869-6711 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2000 Greenbriar Lane, West Grove PA 19390 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Unidine Lifestyles/Compass Group | > 500,000 | 704-328-6206 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1000 Washington Street, Suite 510, Boston, MA  02118–2798 | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 2019   Latest: 02/08/2021
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Kim McClay, a 59-year old woman, had been working at Jenner's Pond since April 13, 2000. Currently, Jenner's Pond is a Simpson Senior Services continuing care retirement community (CCRC) under contract with Unidine, a food service    provider in the Compass Group. Despite providing over twenty-one (21) years of exceptionally professional service, management began targeting older employees. Only hours after her supervisors were made aware of Ms. McClay's disability, she was placed on administrative leave during an investigation of theft. Although the allegation of theft was determined to be unfounded, Ms. McClay was demoted while on medical leave.

In her last position, General Manager for Hospitality, Ms. McClay's job duties included overseeing Dining in all areas–Independent Living, Assisted Living and Skilled Nursing. She was also in charge of Housekeeping from 2007 until 2021, when Simpson Senior Services requested a contract change, adding Housekeeping to her responsibilities. In January 2021, Mr. Flasher requested another contract change to eliminate Ms. McClay's housekeeping responsbilities. Ms. McClay received numerous accolades for her dedication, loyalty and outstanding performance. Until February 2021, Ms. McClay had not received any complaints from management, or clients, related to her job performance. In fact, Ms. McClay was consistently praised for her performance, receiving merit-based salary increases each year. In addition to internal commodation, Ms. McClay's exceptional performance was recognized by leadership of other CCRCs. Once admired and respected throughout the industry, Jenner's Pond became an increasingly hostile workplace, targeting older employees. A consummate  professional, Ms. McClay followed Compass policy to address the toxic environment that decreased staff, and resident, satisfaction.

Kim McClay, and another older employee working at Jenner's Pond for over 20 years, Martin Lespier, Senior Executive Chef, began feeling targeted professionally and personally in early 2019. The new Chief Operating Officer at Jenner's Pond, Douglass Flasher, was the source of the humiliation and denigrating remarks. Management was verbally informed of the older employee's concerns in 2019. At the 1/14/2020 Dining Committee Meeting, residents complained to Mr. Flasher about

what they perceived as a decline in dining services, especially after Mr. Lespier was reassigned, and replaced by a younger Chef. Mr. Flasher publicly humiliated Ms. McClay at this meeting, in effect holding her responsible for the changes. In fact, it was Mr. Flasher who contrived to remove Mr. Lespier through Ms. McClay's supervisor, Matt Groux. Compass Human Resources escalated Ms. McClay's complaint about Mr. Flasher to the Regional Vice President, Eugene Hood, and brought to the attention of Unidine Area President, Jack Silk. However, Mr. Flasher's behavior towards the older employees did not change. After 23 years of serving the Jenner's Pond community, Mr. Lespier resigned at the end of 2020. Similarly, Ms. McClay felt that Mr. Flasher was attempting to create a work environment so hostile that her position would become untenable, forcing her to resign. Mr. Flasher treated Ms. McClay differently than other similarly-situated males.

       On 2/8/2021, Douglass Flasher requested a meeting with Matt Groux and Eugene Hood. On their way to the meeting, Messrs. Groux and Hood overheard a phone conversation in which Ms. McClay learned that surgery was recommended to treat her back pain. After the meeting, they informed Ms. McClay that she was immediately placed on administrative leave during an investigation of theft. She was asked to leave, and locked out of Jenner's Pond email. She did not take any of her belongings. On 2/12/2021, Ms. McClay's primary care provider, Julia Kasper, submitted FMLA paperwork to Unidine/Compass. The allegation of theft was determined to be unfounded.

       On 3/24/2021, Ms. McClay was informed that she would resume work at a level below her proven professionalism when returning from medical leave. It has been indicated, in no unceratin terms, that Ms. McClay will not resume her responsibilities at her previous job. Certain facts remains clear, Jenner's Pond discriminated against Ms. McClay because of her age; upper management there and at Unidine failed to protect her from the hostile work environment. When her disability became known, Jenner's Pond and Unidine relied upon a pretextual theft investigation to justify their retaliation of removing her as General Manager for Hospitality.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>07/28/2021                                  <br>*Date*                         *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Kimberly McClay<br>1413 Berry Drive<br>Kennett Square, PA 19348 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1000<br>Philadelphia, PA 19107 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-04383** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9707** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | | |
|---|---|---|
| [ ] | More than 180 days have passed since the filing of this charge. |
| [X] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [X] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Dana R. Hutter*      9/15/21

**Dana R. Hutter,**
**Deputy Director**      *(Date Issued)*

cc:

| Giancarlo Pozos<br>Associate Counsel<br>Compass Group - Legal Dept.<br>2400 Yorkmont Rd<br>Charlotte, NC 28217 | Andrew Lacy, Jr.<br>THE LACY EMPLOYMENT LAW FIRM LLC<br>2514 W Seybert<br>Philadelphia, PA 19121 |
|---|---|

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 530-2021-03385 |

| **Pennsylvania Human Relations Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Martin Lespier** | **717-475-2828** | **January 13, 1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| 76 Newlin Rd, Parkesburgh, PA 19365 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Jenner's Pond** | **500+** | **610-869-6700** |

| Street Address | City, State and ZIP Code |
|---|---|
| 2000 Greenbriar Ln, West Grove, PA 19390 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Compass Unidine** | **500+** | **704-328-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| 2400 Yorkmont Rd, Charlotte NC, 28217 | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest      Latest |
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | **Oct. 2019      December 2020** |
| ☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Mr. Martin Lespier is a 65-year old Hispanic male who was formerly employed by Compass Unidine ("Compass") and Jenner's Pond. He began his employment at Compass in 1998 and, during his time there, he was jointly employed by Jenner's Pond. Compass is a staffing company that staffed employees for Jenner's Pond's nursing home.

Mr. Lespier was an executive chef who was responsible for all food operations in the Alison Ruston Preston Buildings at Jenner's Pond. Although staffed by Compass, Jenner's Pond served as Mr. Lespier's joint employer. Indeed, Mr. Lespier's position was salaried; he had to follow Jenner Pond's schedule and policies; his work station was located at Jenner's Pond; he had set hours; and he could not come and go from Jenner's Pond as he pleased.

On October 12, 2019, Mr. Lespier first began experiencing racism/ageism at Jenner's Pond. He was moved to another building and his job was taken over by his assistant.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 05/12/2021          *Marte Lespie* | |
| Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

Charge Presented To:          Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC

**Pennsylvania Human Relations Commission**          and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Doug Flasher, COO of Simpsons Senior and Interim Executive Director of Jenner's Pond, made this decision.  Mr. Lespier was not afforded the opportunity to complain about the reassignment because Mr. Flasher instructed management from Compass to inform Mr. Lespier of this adverse employment action. This was due to Mr. Lespier's age and race.

Following his reassignment, Mr. Lespier continued to endure hostility and discrimination.  He endured comments and microagressions indicating that the was no longer welcome amongst the staff.  In fact, shortly after the reassignment, management endeavored to secure Mr. Lespier's removal from his position.  Mr. Flasher in particular led the charging noting his distaste for "contract employees," which was shorthand for older employees who had been at Jenner's Pond for years.

Mr. Lespier was notified in late 2020 that he would have to resign from the position.  This was not due to performance.  Mr. Lespier had excellent performance reviews and evaluations.  In fact, he had superior food and labor costs over the course of his 22-year career as well as great reviews from residents.  His inspection records also bore out his excellent performance as executive chef.

Mr. Lespier was told by two Unidine employees, at Doug Flasher's behest, that he had to "be out by the end of the year."  He was not given a choice.  If he did not resign, Mr. Flasher would personally fire him.  On December 28, 2020, Mr. Flasher succeeded in forcing Mr. Lespier's resignation.  This amounted to a constructive discharge.

Jenner's Pond replaced Mr. Lespier with Mr. Lance Powers.  Mr. Powers is over twenty years younger than Mr. Lespier.  And Jenner's  Pond paid him $14,000 less to take the position.

Jenner's Pond and Unidine's actions undoubtedly demonstrate that they only eliminated his position due to his age and/or race.

---

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

05/12/2021

*Date*          *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC Form 161 (11/2020)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Martin Lespier**
**76 Newlin Road**
**Parkesburg, PA 19365**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-03385** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter*

**Dana R. Hutter,**
**Deputy Director**

August 16, 2021

*(Date Issued)*

Enclosures(s)

cc:
**Giancarlo Pozos**
**Associate Counsel**
**COMPPASS GROUP**
**2400 YORKMONT RD**
**Charlotte, NC 28217**

**Andrew Lacy, Jr.**
**THE LACY EMPLOYMENT LAW FIRM LLC**
**2514 W. Seybert**
**Phila, PA 19121**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Martin Lespier** | **717-475-2828** | **January 13, 1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| 76 Newlin Rd, Parkesburgh, PA 19365 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Jenner's Pond** | **500+** | **610-869-6700** |

| Street Address | City, State and ZIP Code |
|---|---|
| 2000 Greenbriar Ln, West Grove, PA 19390 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Compass Unidine** | **500+** | **704-328-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| 2400 Yorkmont Rd, Charlotte NC, 28217 | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | **Oct. 2019** | **December 2020** |
| ☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Mr. Martin Lespier is a 65-year old Hispanic male who was formerly employed by Compass Unidine ("Compass") and Jenner's Pond.  He began his employment at Compass in 1998 and, during his time there, he was jointly employed by Jenner's Pond.  Compass is a staffing company that staffed employees for Jenner's Pond's nursing home.

Mr. Lespier was an executive chef who was responsible for all food operations in the Alison Ruston Preston Buildings at Jenner's Pond.  Although staffed by Compass, Jenner's Pond served as Mr. Lespier's joint employer.  Indeed, Mr. Lespier's position was salaried; he had to follow Jenner Pond's schedule and policies; his work station was located at Jenner's Pond; he had set hours; and he could not come and go from Jenner's Pond as he pleased.

On October 12, 2019, Mr. Lespier first began experiencing racism/ageism at Jenner's Pond.  He was moved to another building and his job was taken over by his assistant.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| _____      *Martin Lespier*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Pennsylvania Human Relations Commission** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Doug Flasher, COO of Simpsons Senior and Interim Executive Director of Jenner's Pond, made this decision.  Mr. Lespier was not afforded the opportunity to complain about the reassignment because Mr. Flasher instructed management from Compass to inform Mr. Lespier of this adverse employment action.  This was due to Mr. Lespier's age and race.

Following his reassignment, Mr. Lespier continued to endure hostility and discrimination.  He endured comments and microagressions indicating that the was no longer welcome amongst the staff.  In fact, shortly after the reassignment, management endeavored to secure Mr. Lespier's removal from his position.  Mr. Flasher in particular led the charging noting his distaste for "contract employees," which was shorthand for older employees who had been at Jenner's Pond for years.

Mr. Lespier was notified in late 2020 that he would have to resign from the position.  This was not due to performance.  Mr. Lespier had excellent performance reviews and evaluations.  In fact, he had superior food and labor costs over the course of his 22-year career as well as great reviews from residents.  His inspection records also bore out his excellent performance as executive chef.

Mr. Lespier was told by two Unidine employees, at Doug Flasher's behest, that he had to "be out by the end of the year."  He was not given a choice.  If he did not resign, Mr. Flasher would personally fire him.  On December 28, 2020, Mr. Flasher succeeded in forcing Mr. Lespier's resignation.  This amounted to a constructive discharge.

Jenner's Pond replaced Mr. Lespier with Mr. Lance Powers.  Mr. Powers is over twenty years younger than Mr. Lespier.  And Jenner's  Pond paid him $14,000 less to take the position.

Jenner's Pond and Unidine's actions undoubtedly demonstrate that they only eliminated his position due to his age and/or race.

---

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

_____        _____
*Date*                          *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:   **Martin Lespier**<br>        **76 Newlin Road**<br>        **Parkesburg, PA 19365** | From:   **Philadelphia District Office**<br>          **801 Market Street**<br>          **Suite 1000**<br>          **Philadelphia, PA 19107** |

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-03376** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R Hutter*

August 16, 2021

Enclosures(s)

**Dana R. Hutter,**
**Deputy Director**

*(Date Issued)*

cc:    **Doug Flasher**
       **COO**
       **JENNER'S POND, INC.**
       **2000 GREENBRIAR LN**
       **West Grove, PA 19390**

       **Andrew Lacy, Esq.**
       **THE LACY EMPLOYMENT LAW FIRM LLC**
       **2514 W Seybert Philadelphia**
       **Phila, PA 19121**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you** *receive* **this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge Nos(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 530-2021-04382 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Kimberly Ann McClay** | 302-287-8655 | 12/15/1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1413 Berry Drive, Kennett Square PA. 19348 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Simpson Senior Services at Jenner's Pond | ~300 | 610-869-6711 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2000 Greenbriar Lane, West Grove PA 19390 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Unidine Lifestyles/Compass Group | > 500,000 | 704-328-6206 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1000 Washington Street, Suite 510, Boston, MA  02118–2798 | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☒ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: 2019  Latest: 02/08/2021<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

Kim McClay, a 59-year old woman, had been working at Jenner's Pond since April 13, 2000. Currently, Jenner's Pond is a Simpson Senior Services continuing care retirement community (CCRC) under contract with Unidine, a food service provider in the Compass Group. Despite providing over twenty-one (21) years of exceptionally professional service, management began targeting older employees. Only hours after her supervisors were made aware of Ms. McClay's disability, she was placed on administrative leave during an investigation of theft. Although the allegation of theft was determined to be unfounded, Ms. McClay was demoted while on medical leave.

In her last position, General Manager for Hospitality, Ms. McClay's job duties included overseeing Dining in all areas–Independent Living, Assisted Living and Skilled Nursing. She was also in charge of Housekeeping from 2007 until 2021, when Simpson Senior Services requested a contract change, adding Housekeeping to her responsibilities. In January 2021, Mr. Flasher requested another contract change to eliminate Ms. McClay's housekeeping responsbilities. Ms. McClay received numerous accolades for her dedication, loyalty and outstanding performance. Until February 2021, Ms. McClay had not received any complaints from management, or clients, related to her job performance. In fact, Ms. McClay was consistently praised for her performance, receiving merit-based salary increases each year. In addition to internal commodation, Ms. McClay's exceptional performance was recognized by leadership of other CCRCs. Once admired and respected throughout the industry, Jenner's Pond became an increasingly hostile workplace, targeting older employees. A consummate professional, Ms. McClay followed Compass policy to address the toxic environment that decreased staff, and resident, satisfaction.

Kim McClay, and another older employee working at Jenner's Pond for over 20 years, Martin Lespier, Senior Executive Chef, began feeling targeted professionally and personally in early 2019. The new Chief Operating Officer at Jenner's Pond, Douglass Flasher, was the source of the humiliation and denigrating remarks. Management was verbally informed of the older employee's concerns in 2019. At the 1/14/2020 Dining Committee Meeting, residents complained to Mr. Flasher about

what they perceived as a decline in dining services, especially after Mr. Lespier was reassigned, and replaced by a younger Chef. Mr. Flasher publicly humiliated Ms. McClay at this meeting, in effect holding her responsible for the changes. In fact, it was Mr. Flasher who contrived to remove Mr. Lespier through Ms. McClay's supervisor, Matt Groux. Compass Human Resources escalated Ms. McClay's complaint about Mr. Flasher to the Regional Vice President, Eugene Hood, and brought to the attention of Unidine Area President, Jack Silk. However, Mr. Flasher's behavior towards the older employees did not change. After 23 years of serving the Jenner's Pond community, Mr. Lespier resigned at the end of 2020. Similarly, Ms. McClay felt that Mr. Flasher was attempting to create a work environment so hostile that her position would become untenable, forcing her to resign. Mr. Flasher treated Ms. McClay differently than other similarly-situated males.

On 2/8/2021, Douglass Flasher requested a meeting with Matt Groux and Eugene Hood. On their way to the meeting, Messrs. Groux and Hood overheard a phone conversation in which Ms. McClay learned that surgery was recommended to treat her back pain. After the meeting, they informed Ms. McClay that she was immediately placed on administrative leave during an investigation of theft. She was asked to leave, and locked out of Jenner's Pond email. She did not take any of her belongings. On 2/12/2021, Ms. McClay's primary care provider, Julia Kasper, submitted FMLA paperwork to Unidine/Compass. The allegation of theft was determined to be unfounded.

On 3/24/2021, Ms. McClay was informed that she would resume work at a level below her proven professionalism when returning from medical leave. It has been indicated, in no unceratin terms, that Ms. McClay will not resume her responsibilities at her previous job. Certain facts remains clear, Jenner's Pond discriminated against Ms. McClay because of her age; upper management there and at Unidine failed to protect her from the hostile work environment. When her disability became known, Jenner's Pond and Unidine relied upon a pretextual theft investigation to justify their retaliation of removing her as General Manager for Hospitality.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 07/28/2021                         *Date*            *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |